Harry DUCKWORTH

v.

FORD MOTOR COMPANY, Appellant,

v.

JOHN B. WHITE, INC., Third-Party Defendant.

No. 14208.

United States Court of Appeals Third Circuit.

Argued March 21, 1963.

Decided July 22, 1963.

Michael A. Foley, Philadelphia, Pa., for appellant.

Howard R. Detweiler, Philadelphia, Pa., for John B. White, Inc.

Henry Temin, Manuel Steinberg, Winer & Einhorn, Philadelphia, Pa., for appellee Harry Duckworth.

Before HASTIE, GANEY and SMITH, Circuit Judges.

GANEY, Circuit Judge.

This is a diversity suit brought by Harry Duckworth, a resident of Pennsylvania, against the Ford Motor Company, a Delaware corporation, who sought recovery for personal injuries and property damages caused by a defective steering wheel in a car manufactured by Ford. The action charged Ford with breach of warranty and negligence and Ford, in turn, brought on the record, as a third-party defendant, John B. White, Inc., a Pennsylvania corporation and an authorized Ford dealer, which sold the car to Duckworth. In its third-party complaint, Ford alleged that White was negligent and that its negligence caused or contributed to Duckworth's injuries. In answer to special interrogatories at the end of the trial, the jury found that Ford breached its implied warranty and, additionally, it was guilty of negligence, which were the proximate causes of Duckworth's injuries, and that the plaintiff was not contributorily negligent. It, likewise, found that the third-party defendant, White, was guilty of negligence, which was a proximate cause of the injuries. Damages were assessed in the sum of $50,000.

The district court molded the verdict and entered judgment in favor of Duckworth against Ford in the amount of $50,000 in the main action and in favor

of Ford against White for contribution as a joint tort feasor in the third-party action.

Ford's motion to set aside the verdict in Duckworth's favor was denied. However, the district court set aside the judgment in favor of Ford against White for contribution. On appeal, Ford has abandoned its claim that the district court committed error in denying its motion to set aside the verdict in favor of Duckworth, as well as its claim for indemnity, and presses solely as error, the district court's entering of judgment n. o. v. in favor of White in the third-party action.

The evidence discloses that the plaintiff purchased a Ford Ranch Wagon on February 28, 1957, from White, a duly authorized Ford dealer. Three days after the delivery of the car by White to Duckworth, Duckworth complained to White of the bumpiness in the steering wheel which occurred during that day, that is, he would turn the steering wheel and it would, on occasion, bind or jam. The record further discloses that this again happened, at least 4 or 5 times, while he was in possession of the car. On March 28, 1957, the plaintiff drove the car to White's place of business and the following conversation took place with the service manager:

"Q. What, if anything, did you tell the man at White's, the man you delivered the car to, with reference to what you wanted done on the car?

"A. You mean what I wanted done on the car?

"Q. That is right.

"A. I told him to go over the— the linkage, the steering, the back lock on the—on the back door, and— and the rattles. There was four things.

"Q. And what did he say to you?

"A. When I—when I picked the car up?

"Q. Yes.

"A. When I picked the car up, I says, 'Did you check everything.'

He says, 'Everything is all right,' and he went like this on the steering wheel (indicating). He says, 'Your steering wheel is all right; it will run in itself; but there is nothing wrong with it.'

"Q. Run in itself?

"A. Yes.

"Q. Now, when—what specifically did you tell that man with reference to the steering on March 28?

"A. On March 28th.

*  *  *  *  *  *

"A. I told him it had the stickiness in it and I would like him to check it thoroughly before I take it out again. That is all I said to him.

"Q. Do you know what day of the week that was, by the way?

"A. Friday.

"Q. And on Sunday you made the trip—

"A. I made a trip.

"Q. —with your son;—

"A. That is right.

"Q. —is that correct?

"A. That is right.

"Q. And that was April 2nd?

*  *  *  *  *  *

"Q. No—31st.

"A. Right."

Thereafter, on Sunday, March 31st, three days after this inspection by White, while he was riding with his son, going toward the Benjamin Franklin Bridge, the steering wheel jammed and it took a very hard pull in order to keep the car on the floor of the bridge and from going over and striking the vertical bridge structure. On April 3, 1957, while driving near the approach to the Tacony-Palmyra Bridge, the plaintiff came to a slight bend in the road and, following its curvature, the wheel again jammed and the car jumped the road, struck a pole and the plaintiff was seriously injured.

■ It would seem here that the facts on the record warranted the jury in finding both the defendant and the third-

party defendant negligent and that this negligence was concurrent and that they were joint tort feasors. There is evidence, and the jury so believed, that there was something wrong with the jam nut when the car left the Ford Company, for three days after its purchase there was a complaint made by the plaintiff to White of stickiness in the steering wheel. This would indicate that the jam nut had not been properly secured, although sufficiently tight to hold on certain operations of the wheel. As has been indicated, the jam nut was not consistently loose, but its functioning was rather haphazard and apparently the jury believed that this was so in finding Ford negligent with respect thereto, even though Ford, in the action by Duckworth, argued that the car was alright and that any negligence in the car was caused by White in servicing it. Likewise, as can be seen from the record, there was sufficient evidence to show that White was negligent in that this matter of the stickiness of the steering wheel had been specifically called to its attention when brought to it for the 1000-mile inspection and it had advised the plaintiff the steering wheel was alright and that it had been checked out.

In addition to the evidence in the record that White checked out the steering wheel, at the specific instance of the plaintiff, there is evidence that, at the time Duckworth brought the car to White, the steering wheel had a play in it up to 8 inches, but one day after he took the car out from White's service department, it had a play of only 2 to 3 inches. This shows, and the jury by their verdict found, that White did something to the mechanical operation of the steering wheel while it was there for servicing and since the jury found both Ford and White negligent, it gives rise to contribution in favor of Ford as against White, since they both contributed to the common fault, the defective steering wheel.

The question then poses itself as to whether, on the record, Ford and White are concurrent joint tort feasors, even though their negligence is separated in point of time.

The Pennsylvania courts, previous to Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231, held rather strictly to the doctrine of the common law, as expressed in Merryweather v. Nixan, 8 T.R. 186, that there was no contribution between joint tort feasors unless there was an intentional wrong done to the plaintiff by the joint tort feasors. However, in Goldman v. Mitchell-Fletcher Co., supra, 292 Pa. at p. 364, 141 A. at p. 234, decided in 1928, this doctrine was changed and the rule made to apply to torts which are the result of mere negligence. Succeeding Pennsylvania cases have followed this doctrine. Builders Supply Co. v. McCabe, 366 Pa. 322, 335, 77 A.2d 368; Swartz v. Sunderland, 192 Pa.Super. 466, 162 A.2d 91. By way of statutory liability, in 1939, the Legislature of Pennsylvania passed an Act permitting contribution among joint tort feasors, Act of June 24, 1939, P.L. 1075, § 1, 12 P.S. § 2081. This Act was repealed and implemented by the Uniform Contribution Among Tort Feasors Act of July 19, 1951, 12 P.S. § 2083, and there can be no question now but that Pennsylvania permits contribution among joint tort feasors. This point of view has been followed in other jurisdictions, as in George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, where the court held, "that, where the parties are not intentional and wilful wrongdoers, but are made such by legal inference or intendment, contribution may be enforced."

Furthermore, in D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 266 F.2d 465, 72 A.L.R.2d 1290, the court allowed contribution between joint tort feasors where one defendant's negligent act had preceded the negligent act of the second defendant by about five minutes, so that a concurrent tort does not require simultaneous acts. See also 1 Harper and James, Torts, 693 (1956). Likewise, in Yanick v. Pennsylvania R. R. v. Pullman, Inc., D.C., 192 F.Supp. 368, the court held that as a general proposition a concurrent tort does not require simultaneous acts since in that case there was

a considerable time lag between the separate acts of negligence, as the carelessly designed and manufactured defective coach of the Pullman Co. occurred in 1949, and the negligent act of the Pennsylvania Railroad occurred on January 15, 1953.

The lower court relies on an opinion in this Circuit, Birdsong v. General Motors Corporation, D.C., 99 F.Supp. 163, which concerned a motion to dismiss the third-party complaint. This case is unlike the instant case because the jury here found that if Ford had locked the jam nut "wrench tight" at the factory, it would never have rotated or loosened of its own accord or loosened as a result of the accident, and that this constituted liability on the part of Ford. The jury likewise found White guilty of negligence by reason of the fact that its attention had been specifically called to the failure of the steering wheel to act properly, had examined it and had advised Duckworth that, after having checked it, the steering wheel was alright.

In the case of Jarnot v. Ford Motor Company, 191 Pa.Super. 422, 156 A.2d 568, which the lower court cites, it must be remembered there that the jury found Ford alone guilty and while the tractor, in that instance, was sent to the distributor for adjustment, the cause of the injury there was an inherent defect in a kingpin and there is nothing in the case to show that Tracey, the distributor, did anything to the steering wheel or the kingpin by way of adjustment other than say that there was nothing wrong with it. Accordingly, this case, factually, is not on the same basis as the instant case.

In Builders Supply Co. v. McCabe, supra, where a judgment had been entered against Builders Supply Company, it demanded indemnity from McCabe alleging that the accident had been caused by his negligence and sought to recover from him the damages which it had paid. The court there held that, under the circumstances, it could not recover on any theory of indemnity—which the Ford Company here abandons—but it does state that had the case been governed by Penn-sylvania law, contribution would undoubtedly exist, but since the case was tried under Ohio law, it bars contribution among joint tort feasors.

Accordingly, the judgment of the district court in favor of plaintiff, Harry Duckworth, against defendant, Ford Motor Company, will be affirmed; the judgment of the district court of October 1, 1962, in favor of the third-party defendant, John B. White, Inc., and against the third-party plaintiff, Ford Motor Company, will be reversed, and the case remanded to the district court with directions to reinstate so much of its judgment filed February 16, 1962, in favor of the third-party plaintiff against the third-party defendant for the amount the former proves it has paid the plaintiff in excess of $25,000.